My name is William Kent, and it's my privilege this morning to appear before this court on behalf of LaShonda Green. And with the court's permission, I'll reserve two minutes for rebuttal out of my ten minutes. Sure. I have filed as supplemental authority, which I know the government did receive in this case, Ameline and Blakely. And I also ask permission of the court for supplemental briefing. And it's my understanding, and I did that by motion, that that motion had not been ruled on. But I'm prepared to discuss Ameline and Blakely this morning. You've got an appeal waiver problem to deal with. Yes, well, that's the threshold issue, is the appeal waiver. Of course, if the government breached the plea agreement... You don't get to consider Ameline and Blakely or anything else if you're not here. Well, Your Honor, I think we need to look at the appeal waiver provision in light of Blakely. In particular, paragraph 13 of the plea agreement, which is the appeal waiver, or the second paragraph of the appeal waiver, provides, it excludes appeals of sentences in excess of the statutory maximum. And now our understanding of that term, a sentence in excess of the statutory maximum, has changed in light of Ameline and Blakely. How is that? Well, Blakely holds, Your Honor, as I read it. It doesn't change the statute, does it? No, sir, but this, as the Ninth Circuit said in Ameline, there are these dueling definitions now of statutory maximum. And Blakely came down on the side that statutory maximum is that sentence that a court may impose without determination of any additional fact other than the facts that have been stipulated to by the defendant in her plea agreement. Therefore, in this case, the issue involved is the application by the judge of a fact determination, a sentencing enhancement, obvious permanent disfigurement. Which paragraph is this again? Paragraph 13. I believe it's page 21 of the excerpt to the record. Well, the statutory maximum is you look at the statute and see what the statute provides as a statutory maximum. And see how Blakely changes that. The statute, in this case, provides a maximum sentence, right? Maybe, Your Honor, I misread Ameline, but I thought that Ameline held that the definition now of statutory maximum under Blakely for purposes of application of the sentencing guidelines is the statutory maximum or the sentence that the court may impose without the determination of any additional fact that has not been stipulated to by the defendant in the plea agreement. I thought that was the holding of Ameline. Where, Ameline, are you reading? I never heard that one before. Yeah. Is this a penumbra and emanation for Ameline? I'm sorry, Judge? Is this a penumbra and emanation for Ameline or is it an actual? Well, I think it's not a penumbra, although I... Is a language to Ameline that says this? Your Honor, may I have just a second? Well, yeah. I mean, sure. This is... Ameline is quite long, and I have... I noticed that page, and this is Westlaw page number asterisk, I mean, asterisk four. It says, in striking down Blakely's enhanced sentence, the court explained... It's referring to the Supreme Court. You don't have a slip opinion page number? I'm sorry, Judge. Page six of my copy, that's... Page six... The slip opinion page number. You don't have a slip opinion page number? Oh, slip opinion page number, no, sir. I just have the Westlaw. Excuse me. How is it dangerous to come to the court with second-hand copies of opinions? This is the copy that I supplied to the court. It was at page six of the copy I supplied to the court. And the Ninth Circuit says, in striking down Blakely's enhanced sentence, the court, meaning the Supreme Court, explained, quote, the statutory maximum for Apprendi purposes is the maximum sentence a judge... Apprendi purposes, but you left out that qualifier. That is certainly not the statutory maximum. If you have an Apprendi argument or if you have a Blakely argument preserved, then we would consider what the statutory maximum is for Blakely or Apprendi purposes. But, Judge... But this is not what this says. It's within the statutory maximum. We look at the statute. We can read what the statutory maximum is. We compare it to your client's sentence. Your client's sentence is less. You don't have an appeal. Your Honor, in Ameline, now you're talking about preserving Apprendi error, if I hear you correctly. Ameline itself involved a plea agreement. Now, although Ameline did not... Does it have an appeal waiver? It does not say. It does not say. Well, we can't very well read into a case an appeal waiver that itself doesn't say that there is an appeal waiver. What's the effect of paragraph 12B that states that the defendant retains the right to appeal the upward departure portion of her sentence and the manner in which that portion of her sentence was determined? Isn't exactly what we're talking about here? Well, sir, paragraph 12 is actually ambiguous. 12B, right. Yes, sir. 12 is ambiguous, I believe. Are you arguing that the plea agreement itself is vague? I'm arguing that it's ambiguous because that paragraph 12 says, and this is the beginning paragraph of 12, the defendant is aware or defendant knowingly weighs the right to appeal except as indicated in subparagraph B below any sentence within the maximum provided in the statute of conviction. That's my Ameline Blakely argument again. Now, it goes on to say, or on any ground whatever or whatsoever. Now, that's the ambiguity. Those seem to be in conflict. I believe under. Isn't your whole appeal as to the upward departures are incorrect? And so why doesn't that paragraph control? Well, another, an alternative argument, if the court isn't persuaded by my Blakely argument, is that I don't think that this appeal waiver was knowingly entered in light of Blakely. My reading of Blakely and my reading of Ameline is that this defendant was clearly misadvised by the court as to the requirement of the application of the sentencing guidelines. And so the understanding of the defendant as to how the guidelines would apply to her case. You're talking now about the Rule 11 colloquy? Yes, sir. So you're trying to set aside the plea? You want to go back and have her go to trial? No, sir. I'm trying to, though, challenge this appeal waiver by whatever means necessary. My first argument is. If you want to say that the guilty plea is invalid and you want to go. I mean, that you can appeal the validity of the guilty plea. Your Honor, I realize you wrote the dissent in the 1992 Gonzales case, and your position there in terms of appeal waivers. And I'm, though, arguing under the 1994 Gonzales case that this breach of the plea agreement is something that simply opens the door to this panel determining my merits issue. If this court determines that the government breached the plea agreement, then appeal waiver doesn't matter. We don't even need to decide the appeal waiver. My argument is the government did breach the. How did the government breach the plea agreement? Because you have to understand the government's obligation under their agreement or their stipulations to the facts. I'm at my two minutes. But their stipulation of fact and stipulation of the applicable guideline, you have to read that, or your decision has to be informed by the sentencing guideline 6B1.4. 6B1.4. So I'm not requiring this court to. Why don't you just come right to the point, huh? That the government breached it by not supporting, not giving the court the reasons why this fact stipulation and why this. You didn't bargain for that. What you bargained was to stipulate on that one issue. And you didn't bargain for the government to argue in favor of a particular sentence. Nothing of the sort. Because that's incorrect with all due respect. Where is it? Because. Where is it? This circuit. Show me where the government, which provision of the plea agreement the government violated. Point of provision. What it is that they promised to do in the plea agreement that they did not do. Your Honor, this circuit. You're not giving me a. You can be patient. I'm from the south. I'm slow. We're running out of time to ask you a question. The answer. I have the same problem. Where in the plea agreement does it say that the government has to get up and advocate for a certain sentence? Where does it say that? It doesn't say it in the plea agreement. It says it in the guidelines under section 6B1.4, which says when the government enters into a stipulation of fact or stipulation of the guidelines, that the government has a duty to come forward and support that stipulation. That's in 6B1.4. The defendant's reasonable understanding, and this is under Delafuente. It did support the stipulation. The government moved to dismiss count two, right? Yes, sir. Okay. And the plea was taken at count one. But it didn't support them, Judge Pregerson, when the PSI comes out with conflicting facts and the government says, I cannot oppose those conflicting facts. That's tantamount to conceding to the conflicting facts. Why don't you have a seat? We'll hear from the government. Thank you, Judge. Good morning, Your Honors. This is Assistant United States Attorney Wes Porter on behalf of the United States, the plaintiff appellee today. May it please the Court, I'm going to address the breach argument first. Did you handle this matter? I did not handle it at the trial court level, no, Your Honor. I am familiar with it. This was handled by a special assistant United States attorney from my office, and I'm a former special assistant, so I sort of look after the matters involving the military. So I knew this was going on at the time, and I did have a hand in the breach. This was a military lawyer that handled it? That's specially deputized in our office, yes, Your Honor. Because this assault occurred on? Military base. That's right, Your Honor. Yeah, we have a lot of military bases out there on Oahu, and each service actually has a representative that operates in our office and sometimes takes matters to trial or handles pleas in this instance. What happened in this case, which is a fairly serious assault case, was the United States Probation Office recommended and the district court ultimately found that the injury to the victim was somewhat more serious than the parties had stipulated to. It's as simple as that. The district court went on an independent fact-finding venture with the help of the United States Probation, and they came up with an offense level that was higher because they found the enhancement due to the injury was more significant. Based on a Crawford case, is there really enough evidence to support that finding, though? I believe there is. You have a telephone call with the victim, it's unsworn to, and the judge really didn't probe into whether it was a permanent injury. It's an obvious injury and it's a present injury, but never went into whether it's permanent. And so how, under Crawford, what's to corroborate what she said? What's in there? What corroboration is there besides the victim's testimony, if it is testimony, over the telephone? It's the government's position that it's the addition of reliability of that sworn testimony, of that testimony, rather. Why is it reliable? It's reliable because the defense had an opportunity at sentencing to cross-examine. The district court themselves made a finding as to credibility. They said that we find it believable. But they did that on the phone, right? That's right, Your Honor. Was she sworn in? She was not sworn in and it was not objected to at the time by defense. And the second part of the argument in response to the question, Your Honor, is that the government's position is that we have to deal with breach first here today because, like some of the other arguments that were brought before this Court first, he's waived the appellate rights through in the manner in which the sentence was found inside the plea agreement. Would you agree the agreement itself is kind of vague as to what the requirements are as to a waiver? And the government drafted that document, so you have a higher standard than the other side. Is that a fair statement or not? I don't believe the plea agreement is vague as to the waiver. Twelve and 13 don't conflict one with the other? Paragraphs 12 and 13? No, Your Honor, because I think the respectfully with regard to paragraph 12, it talks about the appellate waiver that Your Honor mentioned having to do with upward departures. This is not a case involving an upward departure. This is a case where the judicial, again, it's a pre-Blakely judicial determination by preponderance that the judge found that the enhancement did apply. What do you call it, an upward adjustment or what is it? It's an enhancement. It's a finding of an enhancement, an upward departure that's discussed in paragraph 12B is when there's an applicable guideline and the judge looks at that, the district court looks at that applicable guideline and says for the following reasons, I'm going to go up and above and depart upwardly. This is merely a finding using the United States sentencing guidelines and the applicable offense level and finding enhancements under the specific provision that's applicable. That's what happened here. You think that's something Ms. Green would understand when she agreed to this in the contract, what you just said? Absolutely. Absolutely. It's gone over. Otherwise, you'd have to have a waiver for the whole sentence. That's right, Your Honor. That's right. The fact that this is tailored as it is, I mean, in order to be able to challenge the actual determination of the sentencing range, you'd have to say the sentence is appealable. That's right. That's absolutely right. And what goes on and what we're looking at with this appellate waiver is that she waives the rights to challenge the manner in which the sentence is determined and only reserves that right with regard to what we've been talking about, an upward departure from the applicable guideline. There was no upward departure in this case. And unless the only way on the facts and the record in this case that we can get to that decision is to talk about the government's breach. What's the difference between an upward enhancement and an upward departure? The first distinction is an enhancement is a finding by preponderance of the evidence that a particular guideline provision that moves the guideline range upward. So the applicable guideline range is moved, but it is not a departure, which after that, after you find the applicable guideline range, a departure is going above and beyond it for some reason that's not articulated in the guidelines. So one is an enhancement and one is a departure. Much the same way where there are reductions for minor rule. Is she in custody now? Yes, Your Honor. And how long has she been in custody? It's about a year from sentencing to today. It was August of 2003, I believe. Is she still in custody? Yes, Your Honor. I believe 41 months was the ultimate sentence. 41 months. All right. So she'd been in for 12. And under the plea bargain, the range would have been 27 to 33 months. And she was sentenced in the range of 37 to 46 months. And she got 41 months. That's correct. All correct. And it's the government's position with some of these paragraphs that are highlighted in our response brief, Paragraph 11, Paragraph 18, it talks about, although there are factual stipulations, although there are stipulations that, offense-level stipulations, that the governments and the parties would agree that we would stipulate the bodily injury and that the court may determine on its own and the court is not bound by those stipulations. Where in the telephone conversation or in the emergency room records or anywhere, is there any suggestion that the injury is permanent? Your Honor, the simple answer is it comes from the telephone call. It comes from that. What did she say that indicates it's permanent? I've read it very carefully. Where in what she said, rather than being obvious, that it's a permanent injury? I think it's the discussion with the district court on the telephone about the length of the scars, the width of the scars, and the actual fact that this conversation now is taking place so many months after the incident and that she still has these scars. She talks about them being jagged. She talks about them being embarrassing. I think it's the actual time where the district court is taking the telephone testimony in relation to when the incident took place, those many months past, and the fact that she still has these significant scars in different areas of her body that are prominent. Where were these scars? There was one across the chest, one on the back, one on the abdomen. Were they on her breasts? Yes, Your Honor. Yeah, across here, across the upper chest area. It was essentially, you know, it was with a knife. It's a three-inch blade or so, and it was sort of a cutting and slicing type of assault. And I think page 96. You're saying that the district court could infer from the state of the scar at the time the testimony was given that this is a kind of scar. If it hasn't healed by now, it's not going to disappear. Yes, Your Honor. This is the case where, you know, there are stitches. There are 48 stitches in this case to suture all of these different wounds, and stitches are removed. I believe the advice in the medical records was come back in a week, we'll remove the stitches. So this is months and months after stitches have been removed after. But you're not a doctor. Is there any doctor that says what you just said?  That's correct, Your Honor. And to give the parties an opportunity to go during that two days to obtain more evidence, such as medical records, photos, et cetera, that might be presented. Nothing was presented. The only thing that happened was they called her up on the phone, and she says she's got these scars. My question is, what medical evidence is there to support? Is it enough that she says it is that you think that maybe a scar is going to last forever, or does there have to be something to indicate it's reliable under Crawford? And, Your Honor, the direct answer to the question is that what indicates reliability is the district court's finding. She's there to assess the credibility when she's talking on that day. Page 96 of the record actually has the district court coming out and saying, I find the victim's testimony truthful. Actually makes a credibility finding based on the conversation on the phone. Well, truthful is different than whether it describes what they're supposed to describe. She might have been telling the truth. And the other discussion that we've been talking about already, about the fact that she finds that the scars are still there. Thank you. I see that my time is up. Thank you. Is my time up, or may I have some rebuttal? Well, go ahead. Don't waste it, though. Just come right to the point. My point is, I think, with all due respect, Ameline does bind this court to the holding that the statutory maximum is the sentence the court can impose without finding any additional facts. We may disagree with that. Did you find something in Ameline to support you? Your Honor, it's both at page 6 and page 8 of my copy that I submitted to the court. That is this statement of the definition of statutory maximum sentence, which appears to be adopted by Ameline. Well, they said for Blakeley purposes. For Blakeley purposes. That is my argument. But that's not what the appeal waiver says. It's not statutory purpose. It says statutory maximum. For Blakeley purposes, you may very well have a – in fact, Blakeley goes away as a problem if you treat the statutory maximum in the statute as being the statutory maximum for Blakeley purposes. Then we don't have an Ameline problem at all. It is by presuming that, in fact, you've got some sort of maximum that's below the actual statutory maximum that you have a Blakeley problem at all. Why? You know, if the top sentence that's written in the statute were the same as the Blakeley top sentence, then nothing in the sentencing guidelines could violate Blakeley, and Ameline would be wrong. That's a point of view, but I don't think that's the point of view of Ameline. No, I think that's a fact. It doesn't work any other way. If you accept the statutory maximum is actually written in the statute as being the statutory maximum for Apprendi and Blakeley purposes, then you haven't got a problem because all sentences are below that, and any sentence given under the guidelines becomes constitutional. But isn't that what Blakeley is all about? I mean, isn't that – that's the essence of Blakeley, Judge Kaczynski, and that is the essence. That's why when it says the statutory maximum for Blakeley purposes, it doesn't mean the statutory maximum that's written in the statute. It means a different statutory maximum. It's a different phrase. But that has to control the interpretation by this Court. Well, you didn't say that in your plea waiver. The plea waiver just says statutory maximum. But this Court is bound under Griffith v. Kentucky to the Supreme Court's holding in Blakeley, so this Court has to construe that appeal waiver in the light of Blakeley. Thanks, sir. But what – let me just find this here. The victim was on the telephone line. It's Wendy Diaz Martinez. I mean, she told a pretty rough story about what happened and how it affected her and talked about her scars. And then Ms. Gray, defense counsel – you weren't the defense counsel.  She questioned her, and the judge talks about the scars and they're large. Psychologist. Trying to find – long discussion on that. And she did – or she did point to the court – point out to the court she believes the government should not have done that. And then she made a point about the government's sensing argument to be a breach of the plea agreement. That's that implied promise to support that – the range on the first count. The judge said she didn't think it was. Well, I can't find what I was looking for. Your Honor, may I just say then this in respect to that? Even without Blakeley, it's a breach of the plea agreement. The defendant's reasonable understanding – that's an objective test under Dela Fuente. Her reasonable understanding is what the government's obligation was under this plea agreement, which induced her to enter this plea, would be that the government would comply with the dictates of sentencing guideline section 6B1.4. And that requires the government to give the court the supporting reasons why this is the appropriate guideline and to give the court all the facts to support the stipulation. And when, instead, the PSI comes out with a statement of facts which is inconsistent with that 1.4C, where it says that it requires a stipulation set forth with meaningful specificity, the reasons why the sentencing range resulting from the proposed agreement is appropriate. That wasn't done here. It wasn't done, at least when we get a conflicting PSI draft that says there's a different set of facts than what you've stipulated to, to then stand silent and say, no, I'm silent, but I cannot object. That's not then to state what's set forth with meaningful specificity. But you're missing a fragment of it. What does it fully say? You didn't even read the full sentence. What does 6B144 actually obligate the government to do? Just let me get it. It obligates the parties. Why don't you read it? What's the citation again? I don't see it cited in your brief, by the way. It's in the reply brief, Your Honor. It's in the reply brief. 6B1.4. 6B1.4. 1.4. Subdivision A, little a. A. What does it say? It says a plea agreement may be accompanied by a written stipulation of facts relevant to sentencing. Except to the extent that a party may be privileged not to disclose certain information, stipulation shall, one, set forth the relevant facts and circumstances of the actual offense conduct and offender characteristics. Two. It doesn't say maybe. Maybe. Right. It says shall. But maybe. Shall set forth. Read it again slowly. All right. The may had to do with except to the extent that a party may be privileged not to disclose certain information. Stipulation shall, one, set forth the relevant facts and circumstances of the actual offense conduct and offender characteristics. Two. Not contain misleading facts. And three. Meaningful specificity. The reasons why the sentencing range resulting from the proposed agreement is appropriate. What does that have to do with your argument? Where does that place an obligation on the government? It says what the stipulation shall contain. Well, Your Honor. Where is the obligation of the government to now argue that there are no other facts that there on the sentence? The government must do so. Where in there? Where in the thing you've read does that say that the government must argue that there are no other facts that there on the sentence? The part that says, among others, set forth with meaningful specificity. Well. To simply quote the board. It was specific. And it was true. But there were also other facts true. It was, in fact, worse than that. It doesn't mean that everything in this stipulation wasn't true. But it turns out not only were these injuries, but it turns out there were disfiguring injuries as well. But that would have been a misleading. So there's no contradiction there. It's not like these are facts that in any way contradict the stipulation. Because it would have been a misleading stipulation then, which the guidelines prohibit. Why? Because the facts are in direct dispute. Now, the question is, what are the true facts? Now, that gets to the merits. But the facts are in dispute. You want to have a trial on this? I guess we can, you know. If you believe the government breached the plea agreement, is that what you're interested in? No, sir. As I put in my remedy provision in my brief, I ask merely for enforcement of the plea agreement. I don't ask to withdraw from the plea. And I think under Santabello, the defendant's preference is to be given great weight. The plea agreement provides that the judge is not bound by the stipulation as far as the range is concerned, as far as the counts that are concerned. Judge Preggers and I have two, a pre-Blakely answer and a Blakely answer. I think under Blakely, she just is entitled to be remanded in sentence without the three-level enhancement, okay, the additional three levels. But pre-Blakely or following Judge Kaczynski's approach, then I think I am entitled to a confrontational hearing. That is, and I'd ask the court to look at Judge Noonan's dissent in Petty, where he talks about the need under the sentencing guidelines for confrontational protections in sentencing guideline fact determinations. And I think Benchimol, the Supreme Court case, the government. I read that. I remember when he, I dissented in one of his opinions earlier on, on the same basis. He was of another opinion then. May I just say, I think this Benchimol case, which is the touchstone, you're going off of the literal terms, it's a pre-guideline case. The understanding of a government recommendation under the Pre-Sentencing Reform Act to make a recommendation of probation additional. I can't see a system where, when it comes to sentencing, you've got to have a jury determination or a finder of fact determining the different facts that go into the sentencing process in the judge's mind and the decision, you know, at hearings and beyond a reasonable doubt. If we, you know, if we conclude or if the Supreme Court concludes, you know, that the sentencing guidelines are unconstitutional, you know, I doubt that, but they might, then we go back, I suppose, to the earlier system where the judge had the authority and the U.S. attorney had very little, if any. But it's been reversed, see? So I think that's going to change. Probably, I haven't thought this all the way through, but maybe a clean way to do it would be just to say that the sentencing guidelines are just advisory. Then you go back to the old system, and when it comes to sentencing, anything comes in. Anything. Which wouldn't do your client any good, because this judge obviously seemed to be... Hearsay. Yeah, I mean, it would actually hurt your client. Just because that's why I want to ameliorate that approach that the guidelines are severable, that blakely just means you don't do the enhancements. I agree if we take the Booker approach and you throw the baby out with the bathwater, my client might get hurt, or at least she wouldn't get an approved sentence, arguably. I agree. Did you find any case where there's an implied requirement for the government to make this argument which would support what you wanted in the guidelines? No. I think you're saying it's not expressly in the agreement, except that meaningful that you've talked about. No, Your Honor, Judge Rhodes. No, I couldn't find a case. I think this could be the case. That is, your understanding of how to apply the government's obligations under a plea agreement, under the sentencing guidelines, if they still exist as we used to know them. But if the government makes a fact stipulation or a guideline application stipulation in a plea agreement today, you just can't apply this for a bench-them-all approach. It's a different system. As you know, Your Honor, as a district court judge, there's the process of determining the proper application of guidelines through the probation office, through the draft pre-sentence investigation report. To just say the government can stand back and not play any role when they've entered into a stipulation of facts, that violates the spirit of, I think, Del Fuente. It violates the spirit of United States v. Berger. The government has an obligation to deal in good faith with the defense. I'm not sure what difference it would have made. It looked to me like the judge just wasn't going to have any of this. And from what I can tell from the record, the government could have stood on its head and said, you know, we really urge the court to adopt, you know, stick by the stipulation and not go beyond it. And I don't think the district judge was going to have any of it because of the serious injuries. Well, maybe. I'm not sure how you've shown prejudice anyway. She did not give a high-end sentence, and she could have. This is a kind judge, too. Yes. And also, Judge Kaczynski, under Camarillo. . . Yeah, what your client did was pretty bad. Of course. Yeah. I mean, I'm not here to. . . Pretty bad. I could send her an apology, but I think we should just stick to the law. And under Camarillo Tello, I think the government has an obligation. This court has to construe the plea agreement promise in light of Camarillo Tello because that would inform the defendant's. . . Did you pay the restitution, your client? Sir? Did your client was ordered to pay the restitution? It was a nominal amount, $400, I think, and I don't know the status of that. I think she's under the prison program that they take it out of her work, but I don't know the status right now. But under Camarillo Tello, there's an obligation to present a united front. There was no united front here, and that informs the defendant's reasonable interpretation of the government's promise and induced her plea, and therefore it's a breach. I think we understand the argument. I appreciate your. . . You also have this provision here. The parties agree that notwithstanding parties' agreement, herein the court is not bound by any stipulation entered into by the parties but may, with the aid of the pre-sentence report, determine the facts relevant to sentencing. Judge, I'm not saying Judge Mulway breached the plea agreement. She acted within her authority that was understood to exist pre-Blakely. But what it all comes down to is that the government attorney should have got up and argued vigorously for the guideline range that was contemplated by the plea agreement. That's it, isn't it? No, sir. I wouldn't say vigorously. Oh, okay. Then just passively, just so. No, sir. But he had to stand up and give the court the supporting information. Either this was a misleading stipulation or it wasn't. If it wasn't, then there's a reason why it wasn't. What supporting information would he give the court? Judge, I don't know what the discovery was in the case, what the basis of the stipulation was, and nobody knows because the government didn't present it at the sentencing. They had these pictures that showed pretty terrible injuries to this woman. Which are not in the record. I don't think the pictures never arrived, do they? I don't know if they arrived, Judge Rose, or not, but I know they're not in the record. Did she ever seek plastic surgery or go to a psychologist, the victim? Well, we know from Judge Mulway's comment that she was visiting a psychologist. But, you know, I've argued and I've tried to point out in detail in my brief, the inconsistencies in the victim's statement. And I think the claim of the need for $500,000 for plastic surgery on 48 stitches on its face means the statement's inherently unreliable, aside from her apparent drug addiction. Well, you know, people, this woman was pretty badly cut up. And what I gather here had some bad scars and jagged scars. And sure she's emotional and she comes up with a figure. So maybe it wasn't $500,000, probably somewhere around $50,000. I think, though, Judge Pregerson, that the record shows, as the PSI facts itself show, that her statement about the jagged nature of the scars, their size, their location, cannot be true. You can tell that from the facts, the medical facts that are in the PSI do not contradict the victim's statement about the size and location of the scars. I point that out in the brief in great detail. Well, some people, keloid, you know, and the scars get ugly and they get red. Well, I think your client got a good break, and maybe we just ought to send her back for a trial, huh? Well, again, I think under Santabella, the defendant's preference is to be a court of great weight, and we've expressly asked not for that remedy, but instead for merely a resentencing. I see no need for that, Judge. I think the court can remand it and she can simply be resentenced. If there was a breach of the plea agreement, which I'm still having trouble finding, then you'd be entitled to your option. But if the argument is that there is an actual violation of Rule 11, that somehow the taking of the guilty, which I didn't see in your brief, but if that's what you're arguing and you're successful in that, then the remedy would be she goes back to trial. We set aside the guilty plea, you, your client, and the government go back to square one, and if you're going to cut a deal, you're going to have to cut a new deal, or you go back to trial. That's the remedy for a violation of Rule 11, if there was a violation of that. Well, Judge, I was just making that argument in terms of deciding whether the appeal waiver provision of the plea agreement, not the plea agreement in total. You're not arguing that there was a violation of the plea colloquy. I'd make a severability argument there that we can sever out the plea colloquy as it relates to the waiver, yes. Are you arguing? No, sir. You're not arguing that there was a violation of the guilty plea? Justice, the appeal waiver that, in light of Blakely's ---- I understand the difference. That's why I'm asking you the question. Justice, you're not arguing that the guilty plea was infirm. No, sir. Infirm. No, sir. You're not just talking about the waiver. Yes, sir. And only as a fallback argument. I don't think we need to get to that. Again, Ameline doesn't say that there was or was not an appeal waiver, but I think we all know there was. Get to the appeal waiver to get to Ameline. You have to get to the appeal waiver to get to Ameline. You don't get to Ameline first and then go to the appeal waiver. You have to get to the appeal waiver and somehow find Ameline in there. Could I ask the court to take judicial notice of the record in Ameline? Because I believe the record in Ameline, based on what the government attorneys told me ---- We don't read opinions based on briefs. Opinions say what they say on their pages. Well, you may, though. I mean, a court may take judicial notice of the record, including the briefs. We just run down to the district court, pick up about half a ton of files, and bring them here and, you know, spend the weekend reading them. I can only ask, Judge. You haven't even read them yourself. Judge, I can only ask. You're getting a long way with charm, and you've already gone over 21 minutes. Now, we'll deduct that from the sentence. Thank you, Judge. Appreciate your patience. It was a pleasure. I wasn't going to add them to the sentence. This is my first argument in front of the Ninth Circuit. It was a memorable one. I want to thank you all, and it was an honor to appear in front of such a panel. You don't want to argue in the Eleventh Circuit? I'm looking forward to it. Oh, yes, sir. In the Eleventh Circuit is where I normally argue, yes, sir. Are you from Hawaii? Jacksonville, Florida. He's in prison. She's in prison. The family was from Jacksonville, Judge. Oh, she's in prison down there. She's in prison in Tallahassee. Don't forget to register to vote. See you later. We'll go back to number one. What? Yeah. Yeah, you're number one. We'll try this again. Thank you for affording me to read the brief in Ross. That's exactly the direction I was headed in. And one of the things that I wanted to point out that I think is salient to this case that wasn't emphasized sufficiently in the briefs is, while it's not fully explored when exactly in the trial record, when exactly my client received the transcripts that contained the information that his new trial was based on, the docket at page 53 in the excerpts of record does indicate that it wasn't returned to him until April of 2001, which was briefly within the time that he could have still filed the motion and been acquitted.
judges: Pregerson, Kozinski, Rhoades